# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **NEST INTERNATIONAL, INC.** <br> 550 Crescent Blvd. <br> Gloucester City, NJ 08030 <br><br> *Plaintiff,* <br> v. <br><br> **MAVIS TIRE SUPPLY, LLC** <br> 358 Saw Mill River Road <br> Millwood, NY 10546 <br><br> *Defendant.* | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | CIVIL ACTION <br><br> NO. |

## COMPLAINT

Plaintiff NEST International, Inc. ("NEST" or "Plaintiff") by and through its attorneys, Bochetto & Lentz, P.C. ("B&L"), avers as follows in support of its Complaint against Defendant Mavis Tire Supply, LLC ("Mavis").

### I. NATURE OF THE ACTION

1. This matter arises from Defendant's refusal to pay more than $2,400,000 for snow, ice removal and other requested facilities services performed by Plaintiff, despite the fact that such services were performed and invoices were issued in accordance with the October 15, 2020 Agreement (the "Agreement") executed by both parties.

2. Plaintiff is a leader in the integrated facilities management industry, and endeavors to provide its clients with the most efficient and effective delivery of support services, including snow and ice removal.

3. Plaintiff provides such support services so that its clients can focus on their core operations and business.

4.	Defendant is a large tire supply company with over 700 retail locations, including substantial locations in the Northeastern United States.

5.	The parties entered into an Agreement for Plaintiff to provide management over snow and ice removal services for over **300** of Defendant's retail locations, including in such snow and ice heavy areas as Upstate New York, Massachusetts, and New Hampshire. During the terms of the contract, Mavis requested other services that were provided, including COVID cleaning, janitorial and other facilities services. All such services were provided until mavis unreasonably refused payment.

6.	Despite providing Mavis with the requested services throughout the 2020-2021 winter season, Defendant has unilaterally ceased payment at or about the time Mavis announced that it was selling the company to a private equity group.

7.	To date, Defendant owes Plaintiff approximately $2,400,000 plus interest.

8.	As a result of these actions, Plaintiff has been forced to bring the instant lawsuit.

## II.  PARTIES

9.	Plaintiff, NEST International, Inc. is a Florida corporation which may be served at 550 Crescent Boulevard, Gloucester City, NJ 08030.

10.	Defendant Mavis Tire Supply, LLC is a Delaware limited liability company which may be served at 358 Saw Mill Road, Millwood, NY 10546.

## III. JURISDICTION AND VENUE

11.	This Court jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000 exclusive of interest and costs and is between citizens or subjects of a diverse states. Moreover, Defendants agreed that any dispute regarding this Agreement would be resolved under New York law.  (**Ex. A** at §M.)

12. Plaintiff is a Florida corporation.

13. Upon information and belief, Defendant's LLC members are citizens of the State of New York and no members of Mavis reside in Florida.

14. Accordingly, the parties are diverse.

15. Venue is proper in the Southern District of New York pursuant to 28 U.S.C § 1391 because Defendants agreed that venue for any disputes arising out of the Agreement "will be in Westchester County in the State of New York."   (**Ex. A** at §M.)

## IV. FACTUAL BACKGROUND

13. Plaintiff is a national integrated facilities management company

14. Among the services it provides is management of all snow and ice removal for its clients.

15. On or about October 15, 2020, Plaintiff and Defendant entered into an Agreement whereby Plaintiff agreed to manage the snow and ice removal for over 300 of Defendant's retail stores all across the Northeastern United States.  (*See* Agreement attached hereto as Exhibit "A.")

16. Those included stores in New York, New Jersey, Massachusetts, New Hampshire and Pennsylvania.

17. Between October 2020 and April 2020, Plaintiff provided management of snow and ice removal for each of the retail stores under the Agreement along with other requested facilities services

18. Pursuant to the Agreement, Plaintiff contracted with snow-removal companies in the retail stores' geographic vicinity to provide the services.

19. Plaintiff trained personnel to ensure that the work was performed to the standards set forth in the Agreement.

20. At all times material, Defendant accepted such services, and at no time prior to unilaterally withholding payment in breach of the Agreement did Defendant or its retail stores have any complaint about the quality of the services provided.

21. Moreover, not only did Defendant accept those services, it received substantial value for those services as the vast majority of its retail stores experienced a significant increase in snow accumulation for the 2020/2021 winter season.

22. Despite this, beginning at the end of February 2021, Defendant began failing to pay invoices.

23. Pursuant to the Agreement, payment for services is due within 45 days of the receipt of the invoice.

24. Such payment terms are necessary, as Plaintiff pays its vendors promptly.

25. For example, at the end of February 2021, Plaintiff issued **566 invoices** salting, de-icing, and snow removal for locations in New York, New Jersey, Pennsylvania, and Massachusetts that remain unpaid to date. (*See* Spreadsheet of Unpaid Invoices attached hereto as Exhibit "B.")

26. To date, Mavis has failed to pay **2205** invoices for its retail locations, thereby withholding **$2,423,516.62** in due and owing payments.

27. Not only is this a substantial sum owed to Plaintiff, but as a responsible business, Plaintiff has paid its vendors and subcontractors to perform the work, even before reimbursement from Defendant.

28. However, when Plaintiff confronted Defendant on its unilateral failure to pay the invoices in April 2021, Defendant alleged that there were "service failures" that entitled Defendant to withhold those fees.

29. Defendant failed to identify each "service failure."

30. Prior to April 2021, Defendant had never before claimed that there were service failures and NEST denies that there was any failure to provide services requested under the agreement

31. Moreover, Defendant only alleged such failures after demand was made for the substantial outstanding balance owed and long after NEST had provided hundreds of thousands of dollars in snow removal and other facilities services. (**Ex. B.**).

32. Additionally, even assuming *arguendo* that such service failures occurred – which Plaintiff specifically denies and demands strict proof for – the Agreement does not permit withholding of all amounts due for such service failures.

33. Instead, the Agreement only allows for Defendant to withhold payment for non-performance of the "specific Service." (**Ex. A** at §10(a).)

34. Instead, Defendant has withheld the sums for all services performed since February 19, 2021 in breach of the Agreement even where no dispute as to such service was ever raised by Mavis.

35. To date, despite demand for payment, Defendant is in default of the Agreement and has indicated it is refusing to make any payments so the contract is deemed to be terminated.

## COUNT I
## BREACH OF CONTRACT
## <u>NEST v. MAVIS</u>

28. Plaintiff incorporates by reference all paragraphs set forth in this pleading as though set forth fully herein.

29. As set forth more fully above, Plaintiff and Defendant are parties to a binding Agreement.

30. Pursuant to the Agreement, Plaintiff agreed to provide certain services to Defendant, including management of the snow and ice removal services for over 300 of Defendant's retail locations.

31. Pursuant to the Agreement, Defendant was required to make payment on invoices for those services within 45 days of receipt.

32. Defendant has not made payment on such an invoices for snow removal since ***February 19, 2021.***

33. Accordingly, Defendant is in default of the Agreement.

34. As a result of Defendant's breach of the Agreement, Plaintiff is damaged in excess of ***$2,400,000.***

35. In addition, Defendant is further in breach of the following state statutes regarding prompt payment of invoices:

   a. New Jersey's Prompt Payment Law;

   b. Pennsylvania's Contractor and Subcontractor Payment Act;

   c. New York's Prompt Pay Act.

36. Defendant's breach of these statutes subjects Defendant to liability for interest and attorneys' fees and costs.

37. In addition to the aforesaid breach of the Agreement, it is clear that Defendant will fail to make payments that are currently due in less than 45 days.

38. Accordingly, it is clear that Defendant has anticipatorily repudiated the Agreement in addition to the Defendant's current breach.

**WHEREFORE,** Plaintiff NEST International, Inc. demands judgment in its favor and against Defendant Mavis Tire Supply, LLC in an amount in excess of Two Million and Four Hundred Thousand Dollars ($2,400,000), plus interest, costs, reasonable attorneys' fees and other such relief as the court deems just.

## COUNT II
## QUANTUM MERUIT – IN THE ALTERNATIVE
## NEST v. MAVIS

39. Plaintiff incorporates by reference all paragraphs set forth in this pleading as though set forth fully herein.

40. Plaintiff provided substantial services, including snow and ice removal services to Defendant.

41. Defendant has received the benefits Plaintiff conferred upon it.

42. Defendant accepted and retained the benefits Plaintiff conferred upon it.

43. Despite that, Defendant has failed to make payment for those services and has made clear it does not intend to make payment for those services.

44. In the alternative to Plaintiff's claims for contractual breach, Defendant's acceptance and retention of those benefits under these circumstances constitute Defendant's unjust enrichment at Plaintiff's expense.

**WHEREFORE,** Plaintiff NEST International, Inc. demands judgment in its favor and against Defendant Mavis Tire Supply, LLC in an amount in excess of Two Million and Four

Hundred Thousand Dollars ($2,400,000), plus interest, costs, reasonable attorneys' fees and other such relief as the court deems just.

Respectfully submitted,

**BOCHETTO & LENTZ, P.C.**

Date: April 14, 2021

By: _____
*/s/ Gavin P. Lentz*

    Gavin P. Lentz, Esquire
    Attorney Bar Code: GL2221
    1524 Locust Street
    Philadelphia, PA 19102
    glentz@bochettoandlentz.com
    *Attorney for Plaintiff*